Please be seated. Thank you for indulging us, but it's something we needed to take care of. We'll now hear Barrow v. Kansas State University, 22-3266, Mr. Edelman. May it please the Court. Alexander Edelman, on behalf of Appellant Janice Barrow, and I'll try to reserve a few minutes at the end for rebuttal if I can. Janice Barrow was a tenured professor at Kansas State University when, in the fall of 2019, she sent a message expressing an as-yet-uncertain plan to retire after that academic year. But this message was not an announcement of her retirement, as she had been made to understand by defendants that a more formal process was required to effectuate that. When Barrow's plans changed, defendants misused her words against her to terminate her employment in violation of her civil and constitutional rights. When Barrow sought to remedy these wrongs, she brought an action in the District Court of Johnson County, Kansas, alleging claims under 42 U.S.C. Section 1983, the Age Discrimination Employment Act, and the Kansas Age Discrimination Employment Act. And despite the viability of those claims, after defendants were moved to federal court, those were dismissed. And we are here today to appeal all those dismissals. First, on the ADA case, the District Court dismissed on the basis of sovereign immunity. And here, in doing so, it overlooked a Kansas Supreme Court decision, cited in the briefs, State Exeral Franklin v. City of Topeka, in which the Kansas Supreme Court ruled that in passing state nondiscrimination laws, the state expressly waived its sovereign immunity to similar claims of employment discrimination. Counsel, I mean, you say expressly, I don't see that. Maybe you can help me with that. Franklin never addressed federal state issues, right? Franklin was about a state's consent to suit in its own courts. So Franklin involved, didn't involve directly a federal issue, but the question was sovereign immunity. Under the Kansas Tort Claims Act. So, I don't think that's correct, no. That's exactly what the court held. They found sovereign immunity under the Kansas Tort Claims Act. So the case does discuss the Kansas Tort Claims Act, but it also discusses- I'm sorry, they found a waiver, sorry. Right. Explicit waiver. It discusses the Kansas Tort Claims Act, but it also discusses the Kansas Act against discrimination.  The district court's finding was that the state has waived its immunity in case of employment discrimination. Right, and that was the district court's finding, which they didn't approve or disapprove. They went on their own and they said under the KTCA, we find this waiver. How do you possibly extend that explicit waiver under the KTCA to this scenario? I would argue that the KCTA, the KTCA, that that distinction is no less applicable. So the argument the defendants have raised and the district court accepted was the KTCA talks about, right, that it makes the state liable under, what is the language, for claims that arise under the laws of the state. But that phrase under the laws of the state, excuse me, is no more applicable to the Topeka ordinance than it is to the federal, than to the federal age discrimination employment act because the statute itself in, what is it, it's 75-62. The definition, it defines the state in such a way that it clearly does not include municipalities. And then that's the definition, state is the subsection A, and the definition of municipality is subsection B. And if you read those, they are clearly two distinct entities. In fact, there's a third definition of governmental entity which covers both. So to the extent that the court was saying that the waiver is because they're being, they're liable under the laws of the state, that couldn't be referring to the Topeka ordinance. That has to be referring to the KAAD, right, the Kansas Act of Discrimination. And that is the law of the state that they are liable under. And so that same reasoning is equally applicable here where under the Kansas Age Discrimination Employment Act, Kansas has made itself under the laws of the state liable for age discrimination in employment. And therefore, it is in so doing has waived its sovereign immunity for being liable for actions under other similar statutes. Counsel, so is it your position that if we endorse the argument that you're advancing with your reading of Franklin, we could write an opinion based on what you are describing and say that that comports with the Supreme Court's directive, the consent to suit must be unequivocal? Yes. And not an inference, that it's unequivocal in Franklin? Yes. And the argument there is that the unequivocal waiver that the Kansas Supreme Court is the final interpreter of the state laws and their interpretation of, because that language goes back to the time that that decision was made. There's been subsequent decisions that have reinforced that. But that is the implied waivers were not personal even at the time. And so therefore, under that standard, the Kansas Supreme Court had ruled that the Kansas Act against, that Kansas in passing these laws provide an express waiver of liability, of its sovereign immunity for. There are two issues here, though. Yeah. And I think you're conflating them. One is sovereign immunity from suit, period. The state could be held liable. That was waived. The second, which is the one that confronts us, is that it is allowing those claims against it to be litigated in federal court. And nothing in the Kansas decisions addresses that. Am I wrong? And what am I missing? So the basis for this being litigated in federal court was the consensual rule by defendants. This was brought in state court for exactly that reason. The state did not waive its right not to be brought. The statutes don't waive the state's right not to be brought into federal court. That is one of the reasons why this was brought in state court. And that sovereign immunity, sometimes it's distinguished as 11th Amendment immunity, was waived when the defendant, KSU, consented to one of the individual defendants' removals. So yes, that is a very important distinction. And we're not claiming that the statute and that waives the right not to be brought in federal court. Again, that's why we didn't do that. Yeah. So then, again, I think that is kind of what went there. If there are any questions on the issue of qualified immunity, here I think the law is kind of laid out pretty clearly in the briefs. And there's, I think, not a ton of discrepancy. The main point I'd like to focus on here is that the decision and the ruling is taken basically based on the defendant's kind of characterization of the facts. And if the motion is specific, it shouldn't. That's not the standard. So when they talk about, you know, in this context, well, they thought she was retiring, and this is just like, you know, this is a retirement, which is different than the other cases. That's their version of it. In plaintiff's version, as construed by the petition, the retirement is entirely a pretext, right? It's just an excuse. It's just a way for them to terminate her and deprive her of these rights. So the distinction, right, again, the idea of things need to be substantially similar are that for qualified immunity to kick in, the public official has to be put on some kind of notice that the Constitution will apply, right? Or that a violation is an issue. And so in defendant's version characterization of events, right, that would be very relevant, right? You would have to say, well, there's no case law that tells me that I have to be very careful when I'm, you know, accepting retirement or not accepting retirement. And if that was what the facts were, then that would apply. Counsel, may I interrupt you? What precisely are the unlawful actions that the individual defendants, Ms. Spears and Mr. Tabor, took against your client? So they terminated her. I mean, they took the steps that, so their position is that they accepted her retirement. But that was the paperwork was done at the instruction of Ms. Spears. And it was when Ms. defendant Tabor, when it was brought to his attention, he allowed it to continue. And I do understand that there is the lack of action there does raise some questions about what specifically did. But again, I think the pleading is that he sort of facilitated it as well. Let's see. And again, I think something is similar with regard to the notion that this, that the Kansas Judicial Review Act, right? And the notion that there's post deprivation review. The pleading set forth that the way things were taken, that there was no process, essentially. That, again, that's in, if you look to paragraphs 8137, essentially, there was no opportunity to be heard. Right? This was just, it was characterized as a retirement and then kind of put into that system. And, and therefore, the, that deprived her of the opportunity to use this, the review act to challenge it because she didn't have a final decision. Excuse me. Well, wait. The dean of the president did refer this to one tribunal, right? So. And that tribunal, you're saying, was limited in its purview. So that tribunal was limited to consideration of her claims that it was, that it was age discrimination. But the underlying fact that she had these tenure rights, that she had not given up because she never resigned, that tribunal never considered that. But then couldn't she get review of her contract claim, the fact that she had not resigned? You're saying that was not reviewable? I thought all that had to happen is it first went to the discrimination tribunal. And if it found no violation, then it could be referred to the tribunal that would ordinarily hear a claim relating to a contract dispute. So, so that is, that is not what is planned. I don't believe that's what happened. I think that the position, and this is, I think in paragraph. That's not what happened. I know it didn't happen, but whose fault was that? What happened? Did the anti-discrimination, did the discrimination tribunal find against her? It did, yes. Okay. And then what happened? And then that was it. Then she was told that she had no, there was no other opportunity to have it heard by the other body. It was specifically said that the discrimination tribunal sometimes took precedent, and so it wouldn't be considered under the other track. After the decision on discrimination, she was told that. I thought she was told that. She was told that before. Yeah. At the outset, she was told it goes to the discrimination tribunal. After it found no discrimination, did she seek review of the contract claim? Well, I guess she had sought that initially. So the answer is no. She did not subsequently seek that. She was told initially that there's, in no circumstances will there be review of your contract claim? Or was she told this has to go first to the discrimination tribunal? She was told, and what was pled was that it goes instead to the tribunal. So that is perhaps not set forth in precise detail, one versus the other in the petition, but. Didn't the district court say it could have been heard by the other tribunal on the contract claim after the discrimination complaint was resolved? I thought that's why the district court took judicial notice of the various internal, well, the procedural documents for review by. Yeah. So it did. But again, I think the point is that the defendants caused that not to be what happened. How did it prevent her from then seeking review of her contract claim? Did you agree that the district court said, maybe it was wrong, but do you agree that the district court said that after the discrimination claim was disposed of, this could be reviewed on the contract claim by a different tribunal? Well, didn't the district court basically say there was a post-deprivation remedy, which through her appeal of that hearing, the PPM 3010 process, she could have raised the argument you're making at the next level, I guess. Which was to say, she could have said, well, this wasn't an adequate process. I needed the other type of hearing. Yeah. She could have made that argument. That's what the view of the district court was. And also, what about the fact that, I mean, Kaye State argues that essentially her claim was one and the same here. There wasn't really a distinction between her contract claim and her age discrimination claim. It was based on the same argument. Yeah. I think that's pretty demonstrably untrue, because the age claim is that I didn't resign, and the reason that you're saying I did is that you're discriminating against me because of my age. And so there, that goes to the element of intent. Whereas the underlying claim, it could just be that there's any reason that she didn't resign. Like, the age claim, there could only be resolved in her favor for one reason, which is that she was being discriminated against because of her age. The other claim was that even if there was no age discrimination, she had tenure rights, and her position was that she hadn't given them up. And again, we won't get all the details, but that the only way to retire was to fill out a certain form. She didn't fill out the form. Therefore, she had to retire. If that is the case, then it doesn't matter why. Thank you. Thank you. Let me ask one factual issue. When was the decision by the discrimination board? Was that before her resignation would take effect? I believe so. It was initiated before her termination, right? I believe so, although I don't actually know that we give that date in the petition. OK.  Yes. Thank you, Your Honor. May it please the court. Michael Raup and Derek Teeter on behalf of Kansas State University. There is no language in the KADEA or in any other Kansas statute that expressly waives the state's sovereign immunity for claims under the federal ADEA. And under binding precedent from the Supreme Court, as well as it's been articulated by the Kansas Supreme Court, that's the end of the inquiry with respect to the sovereign immunity point. Additionally, the district court properly dismissed the due process claims, concluding that there was adequate pre-deprivation process and also that there was adequate post-deprivation process available. And finally, the district court did not err in dismissing the state law claims without prejudice, as opposed to remanding them when it declined to exercise supplemental jurisdiction. What was the pre-termination process that was provided to her? So the pre-termination process was the PPM 3010 process that you... That's the discrimination. That's correct. And the way that the policies work, Your Honor, is that... And this is in... The process that she is claiming now in this lawsuit, at least on appeal, that she wanted to have is referred to as Appendix G. That's the name of the policy. Within that policy itself, it says if a claim is made that involves an allegation of discrimination, the entire process is routed to that, what you refer to as the discrimination. The entire process? Yes. Not just resolution of the discrimination?  No, Your Honor. So in that proceeding before the discrimination tribunal, as I've referred to it, she could have argued that she had not resigned, that that was an error... I think she could have... ...by the university, and since she didn't have to resign for another year, that she still had her contract. I think that's right, and I think that it's also, as Judge Moritz was indicating, the inquiries here are really one and the same, because... I didn't say that. I said that's what you said. Yeah. Fair enough, Your Honor. I think you were right in pointing out that argument, because I do think that it's a predicate determination that has to be made, right? When you're looking at a discrimination claim like they would be doing through the 3010 process, they're going to have to determine whether there was an adverse action, and then whether it occurred because of discrimination. So when they're determining what that adverse action is, whether she resigned or not is a predicate inquiry that's included there. And irrespective of all of this, the district court's secondary holding was even... If you're really focusing on discrimination, couldn't the tribunal have said, we don't have to decide whether she had, in fact, resigned? All we have to find is that the determination that she had resigned was not made for discriminatory reasons. I suppose that they could find it that way. I don't believe it's in the record that they did here. What does the record show about it, what they decided? I think the record demonstrates that it showed that it was a non-discriminatory resignation. That was the result of the proceeding, at least as I understand the record. And again, irrespective, the district court's secondary reasoning on this is whatever qualms she had with the process as it played out at the university, that's final agency action that the university took at that point. So she had relief available pursuant to the Kansas Judicial Review Act, and she could have made any of these arguments through that process. And the availability of the Kansas Judicial Review Act process is what provides the sufficient post-deprivation process, which also precludes the due process. Is it the availability, or is it the remedy? I think it's the availability of the remedy. Well, I think those are different things. I mean, the availability of a process certainly is responsive to the procedural due process. But if the process itself does not yield a remedy that would remedy her injury, then is it truly a post-deprivation, does it satisfy procedural due process? I think the district court was correct in determining that the Kansas Judicial Review Act would have been able to provide her all of the relief that she seeks here, whether that be reinstatement or attendant damages to that, or a remedy for additional process if she believed that that's what she was entitled to. So I just want to make sure that I'm clear on the distinction. I do think it's the availability of that, not whether she sought it out or not, that is the determinative inquiry. And that's the Atala case that we rely on from the Second Circuit. Again, there, the plaintiff did not seek the judicial review, but it was the availability of that judicial review. But I take your point, and I think you're right, that it would have to be a process that could afford her the relief that she's seeking. And I think that it does here. So you seem to be saying in employment cases, you can always get adequate post-termination relief, because you can always give them damages and reinstate them and so on. Is that the case? Are there any cases saying that the post-termination remedy was not adequate? With respect to state employees that are asserting essentially breach of contract and termination, I think that the Kansas authorities say that the exclusive means for reviewing those determinations are through the Kansas Judicial Review Act. Yeah, but the question is whether they're adequate under due process, under constitutional due process. Are you aware of any cases, and I'm not talking about Kansas law, where a post-termination proceeding is considered inadequate under constitutional requirements because the relief can't be the same? You're reinstated, but she's not going to be teaching for a year or whatever. What's the law on that? I'm not aware of any cases that have addressed that question. Isn't that the issue here, whether the post-termination proceeding was adequate? Well, that's – I mean, I think that's – I gather the district court said it was adequate. Correct. Because she could be reinstated and be compensated for the time she didn't teach. Correct. Correct. So with respect to this proceeding, I do think that's adequate. I think going to Judge Rossman's point, if there were a state's judicial review act that hamstrung or limited what that – the relief that could be afforded under that act, then perhaps that raises a different question. But I don't think that's the issue here. That's the case here. Returning briefly to the sovereign immunity point, I just want to make sure and put a fine point on a couple of items with respect to sovereign immunity. Once the Supreme Court decided Alden versus Maine, that was sort of the watershed decision that led to this entire line of authority determining when waivers of sovereign immunity with respect to federal – and the relationship between the federal and state sovereigns are at play. And I think that the court's analysis in terms of waiver should very clearly be directed by the Kansas Supreme Court's decisions in Shawl and Purvis to the extent that they're looking to state law waiver principles. And they just articulate what the U.S. Supreme Court has said time and again in Alden versus Maine, in Sausman versus Texas, that the waiver must be clear, unequivocal. And according to the Kansas Supreme Court, must be made in a specific legislative enactment. In other words, there must be language in a statute that says that Kansas is waiving its sovereign immunity. And that does not exist here. And Judge Rossman correctly points out that with respect to the Franklin decision, that involves an entirely separate form of immunity in the first place. It involves the relationship between a state and a municipality. A municipality that the state has created itself and has vested certain legislative authority in that entity. That's an entirely different scenario than what we're dealing with here. And as Judge Moritz also correctly points out, that involves KCTA immunity. Again, not applicable here because the KCTA is expressly limited only to laws of the state. In other words, state laws under the state of Kansas. So I think the inquiry for sovereign immunity for this court's purposes on appeal can begin and end with the fact that there's no express legislative enactment from the state of Kansas that purports to waive immunity from the federal ADEA in any respect. I believe we've touched on most of the due process points. With respect to the individual defendants, the additional point that I wanted to raise with respect to qualified immunity is what the district court articulated. That even if they could surpass the first element of qualified immunity and show any plausible due process violation, there's no authority establishing or showing that it's clearly established in any event. What would the clearly established law have to be? Here, I think it would have to be something related to the process through which those complaints were routed because that's what I understand the procedural injury to be here. So I think it has to be something more than teachers are entitled to due process, which is essentially... So the 10-year property interest sort of anchors her right. But then the clearly established law as to this context has to be about the process that the university provides? Yeah. So if there was a case saying that... I think a good example would be this discrimination inquiry that we're talking about, that somehow routing a complaint through a discrimination process is procedurally insufficient. Again, we don't think it is. And we also think that most of that argument is waived here because there aren't any allegations made about the process itself. It's just what she believes was analyzed within the course of that proceeding. Again, which is all curable through any action through the KJRA. So I think you have to get at least something. And again, I'm fully aware that there's plenty of debate out there about the level of specificity required. I don't think we're even in that zone in this case because we're only talking about... Essentially, Loudermill is basically all that's cited here, in addition to Helen, which they cite for the proposition that it applies to teachers. So we're at the highest level of generality possible. So I don't really think that it travels to that sort of level of granularity, and I don't think we get close to it being constitutionally problematic here. What is alleged in the complaint with regard to the defendant's actions? Their specific actions? Do you think it was a due process? Well, I don't think there's anything that's alleged with respect to specific actions on behalf of the individual defendants. On behalf of or by? By. By. So I think as counsel articulated it, I believe it's that one of them accepted the resignation. But again, that's done pursuant to policy, and I don't see how that can create individual constitutional liability. So do you think this fails simply because of lack of particularized allegations, which were required in 1983? I do. Did you make that argument? We did, and I think that the Tonkovich case is probably the best citation we gave for that. That it must be, it can't just be a generalized requirement on behalf of the institution. In other words, if she wants to argue that she was not afforded sufficient process by the institution, fine. But she can't then turn that into an individual 1983 claim unless she can demonstrate that it was a certain administrator's responsibility to provide that specific process, and that specific process was not provided for whatever reason. Since we have a moment, I'm going to ask you about Loudermill. Because it says, the root requirement of procedural due process is that an individual be given an opportunity for a hearing before he, she, is deprived of any significant property interest. And in the employment context, it's that prior to the discharge of an employee, a hearing is required before discharge of an employee who has a constitutionally protected property interest. That seems inconsistent with the district court's view that the post-termination proceeding was adequate because you could be reinstated. I think the Supreme Court's concern was, well, while you're waiting to get reinstated and get paid damages, you've lost a job. That's pretty big deprivation. Right. And so I think, if I may, Your Honor, I think what the court's getting at there is that, because again, we're making the argument that both are sufficient, right? That she did have sufficient pre-termination process or pre-deprivation process in the form of a small age hearing process through PPM 3010. And then, if there were any deficiencies in that process, those are properly raised through the KJRA proceeding. So... How does that satisfy what I just read from Loudermill? You haven't gotten your due process before you're terminated. So the fact that it can be cured post-termination sounds inadequate under Loudermill. Well, I think this goes back to our same remedy discussion that we were having earlier. Yeah. If it can provide the remedies for the same thing, then I do think that that provides... That seems like a reasonable argument, but it seems contrary to what Loudermill said. Well, and again, I don't think Loudermill, at least from my recollection of it, I don't think Loudermill got into this post-deprivation sort of world at all. Sure, it said that you need to have this procedure before termination. I agree. That's pretty much getting into post-termination. Well, I agree, but it wasn't looking at post-termination relief as well and determining whether it was sufficient. So again, if it were faced with the question in Loudermill of not only did we not have this pre-termination process, which that was the issue there was that there was no pre-termination process at all, but it wasn't also faced with, and here's the other thing that you could have done after the fact, that the state is arguing satisfies that constitutional requirement. So I think that's what Atala and the Second Circuit and those other authorities are getting into. Thank you. Did Mr. Edelman have any? No, sir. Thank you, counsel. Case is submitted. Counsel are excused.